Please. May it please the Court. My name is Lee Rowland and I represent Joe and Catherine Plyler. And the issues before the Court are, first of all, the calculation of projected disposable income and the effect of the applicable commitment period. Now, as to the projected disposable income, the issue is whether positive projected disposable income can be created separate and apart from a debtor's uncontested negative disposable income formula. Now, I submit to this Court that a debtor's projected disposable income in 1325b1b cannot be determined in isolation from the disposable income formula contained in Title 11, 1325b2 through 3. So you're saying that projected disposable income is the same as disposable income? No, Your Honor, not precisely. And I think what disposable income does is it sets the formula initially. And what that does is, once the formula has been calculated, because we follow the forward-looking approach under the Supreme Court's decision in Lanning v. Hamilton. You're okay with the forward-looking approach? Absolutely. Absolutely. It's the application of the forward-looking approach that's the issue in this case. Hamilton v. Lanning, you know, we apply the forward-looking approach, and the first step in that approach is to calculate disposable income pursuant to the statutory formula. And in most cases, nothing more is required. Why is this case not like the Enright-Quigley case? This case is like the Enright-Quigley case, but, however, while it follows that procedure, there is no change. There is no significant change in expenses. Now, when- Make this simple for me. I don't do bankruptcy law, so let's make it simple. What your contention is is that your clients, in this instance, at the beginning, they have a so-called disposable income determination, direct disposable income. If somewhere during the course of that time period, it changes, in this instance, you're no longer paying attorney's fees, so then the court has taken that in consideration for that time period after that's no longer being paid. You don't have to keep it at the same level, because that was already determined at the beginning. What we look at is, as of the effective date of the plan, when we account for changes, like the example- Before I go into this question, I'd like to address the difference between Morris v. Quigley first. Well, we're going to get there, but go ahead and tell me. I'm sorry? Go ahead and tell me that answer. We're going to get there. That's the next question. Yeah. The calculation of projected disposable income is- Excuse me. The calculation of disposable income, the focus is we rely on the test. And when we're- What about projected disposable income? Projected disposable income is the confirmation requirement. We start by doing the test. Now, the difference is that, as far as expenses go, the expenses that we're focused on are what expenses are defined as amounts reasonably necessary to be expended. And for an above-median debtor, we follow the formula. Under 1325B3, which refers to 707B2. And in that formula, the Chapter 13 plan payment is not an expense. It's not an element of the formula. So any change in that expense does not necessarily directly impact the calculation of projected disposable income when accounting for that change. What would the plan payment here be? The plan payment here? Yes. It's $1,784 in the first tier. It's then reduced in the second tier because- Because the attorney's fees are being paid pursuant to the local rule in the Eastern District of North Carolina for bankruptcy cases. Why is that not disposable income, that difference there? That is not disposable income because we look at the test. And an adjustment in a plan payment is not necessarily an expense included in 707B2. How is it different if you've got a vehicle in the beginning of this whole thing and you have it in there that you're going to make the payments on that vehicle? And then once you kind of get in this, you sell that vehicle. Isn't that the same thing if you want to- you've got the beginning, you say, well, I've got to pay my attorney's fees. Now if it's prior- Then you come in and say, I'm just going to pay off my attorney's fees. If it's prior to confirmation of the plan and an individual surrenders a vehicle back to the creditor and saying that they're not going to pay it, they lose that secure debt deduction. There's no question about that under the case in Morris v. Quigley. Now prior to confirmation, when we're looking at- Was it a surrender back to the creditor or was it a selling of the vehicle? Surrendering- Well, surrendering was- It was two ATVs and they surrendered it at the time of filing the case. They didn't have to make that payment. They said they were going to have to make it at the front end. They never said that they were going to make the payment. They surrendered it from the date of the petition. It was part of the plan at the front end. It calculated how they would reach disposable income. They initially did that, but I disagree with that because that's not proper. If you are going to surrender from the date that you file a petition, a secure debt, like paying for an ATV, you have no right to take a deduction on the means test, the disposable income formula. At the beginning, they took that deduction for a vehicle, Quigley. And this court said they shouldn't. And Judge Tractor said, no, you can't do that because in the course of this proceeding you're not paying that. That's disposable income. Absolutely. When we look- When we go to the statutory platform under 707B2, as far as attorney's fees are considered a priority obligation under the means test. That statutory platform requires that that payment be taken over the course of 60 months. So while the debtor may be paying a higher monthly fee of over $200 each month, they only receive a deduction in the amount of $55.58 for that obligation. So it's an accurate reflection of what their income is during the term of the plan. That was a $210 difference between the $17 and the $15. Your Honor, there is a misprint in the final order of the bankruptcy court's order that was transmitted to my brief. It's actually $1,547 instead of $1,584. And it's not about $1,784. And the difference would be? The difference is $237. And you say that's not attorney's fees. What is that? That difference is attorney's fees. Where does the $55 come from? The $55 is when the $55 is the deduction that the debtor is allowed to take on the means test. I understand that. But I want to deal with this $237, because that looks like, to me, disposable income. But the calculation, disposable income is a term of art, and it is explicitly defined. But people are above income. I'm sorry? They're above the medium income. They don't get to fall in the other category where you take out everything. I mean, I know it's a low threshold, but they're above it. And so then you go to that subclause and then a deal when you're above, that's when you get into this applicable period. I don't see how you get out of that six-month deal. Well, what we're first determining is what is the debtor's projected disposable income. And we must. And essentially, if I may, essentially, your argument rests on asserting the projected disposable income in disposable income as reflected on the former synonyms. Yes. The disposable income in this case. The means test was not challenged. There was no objection or contest that it was improperly, you know. I just want to make sure. I thought I started out and asked you, are you saying the projected disposable income is the same as disposable income? And now you say it's equivalent or the same. You said no initially. Now you say yes. Well, it depends on when the forward-looking approach and the test for accounting for significant change is triggered. In this case, the test for a significant change was not triggered. Because a significant change is when a debtor is going to, you know, at the beginning of a petition, they have the obligation to pay a secure debt. They surrender back to the creditor. They're never going to pay that. That they can't take as a deduction. But if the debtor is going to take a deduction for attorney's fees that they're going to pay for a house that they're going to pay out through the plan and cars, they take those deductions pursuant to the statutory formula in the disposable income. I thought your client proposed that figure as being the figure in which they could pay. Yes. I mean, that is the calculation of the plan. But it doesn't result in the fact that –  I mean, I understand, but – and I'm looking at Judge Trax's opinion, which seems to just have some strong language in here along those lines. And then you've got the Flores test that seemed like to be the only circuit, was the ninth circuit that was going the other way on this applicable period. Now it's falling in line on it. So explain that. Explain that to me. Okay. Go into the applicable commitment period issue. Okay. Go ahead. I mean, it's tied in, from my perspective, you've got – as you say, you've got to come forward on the disposable income, I first ask you, were it not your debtors who said – who came up with this figure of $1,700, and just even if you step back and look at it common sense, you say, well, if you've got an applicable period of 60 months, let's just assume you – and somewhere along the line, how do you drop it down and to the exclusion of unsecured creditors who's getting a goose egg in this thing? And based upon a fee that's – you've already paid off the attorney's fee, and it's based upon your projected income and what you have there and what you're paying secured creditors, and then you get this $237, and you're arguing, no, I shouldn't have to pay that. Could I also add – I mean, I think it's along the – or phrased a little more directly so that I can grasp it. And in your understanding of the phrase projected disposable income, as you understand it, is there a mechanism for unsecured creditors to capture the benefits in a circumstance such as this, when after a period of time, the debtor's income rises because of a change that is – we know at the outset it's going to occur. Is there any mechanism that allows for that? Prior to confirmation, absolutely, because there can always – we can always account for a virtually certain change in income or expenses that the debtor incurs prior to confirmation. After confirmation – After confirmation, you're saying there is none. No. No. After confirmation, pursuant to, you know, N. Ray Murphy, if there's a substantial and change in income or expenses, that is – But it's not unanticipated. But what we come back to – what the focus of this is, is what is unsecured creditors entitled to. They're entitled to payment based of projected disposable income, which is determined from disposable income, to the extent that there is some sort of significant change, not a mere difference in expenses. We're talking about a statutory formula. We have to propose the statutory formula pursuant to the statutory platform. Well, is your answer to my question yes or no? The answer is yes. For unanticipated – significant unanticipated changes. Correct. After confirmation. But not – right. And so, the increase in disposable income that is expected because attorney's fees will cease cannot be unanticipated. So that – so, in this circumstance, the answer would be no. And I don't mean – I'm sorry. I am putting words into your mouth. In this circumstance, in this circumstance where it is not an unanticipated – it is an anticipated change, is the answer no? Yeah, you can't answer that. Are you agreeing with me that there would be no such mechanism? Or is there a mechanism there? So, please tell me what it is. Yes, because the benefit that – from the get-go, if the debtor is paying approximately $230 in attorney's fees through the Chapter 13 plan, they do not receive the benefit of a $237 – or $230 approximately deduction on the means test. Because they – No, please don't go there. Please just tell me, is there a way for the unsecured creditors to gain any benefit from the fact that the disposable income changes in a way that is anticipated from the outset after plan confirmation? Yes, within the disposable income formula, which determines projected disposable income. Thank you. Mr. Scott? May it please the Court, my name is Christopher Scott Kirk. I represent Richard M. Stearns, the Chapter 13 trustee in this case. Just to forecast a little bit of my argument, 15 minutes will be devoted to pre-confirmation applicable commitment period issues and projected disposable income issues. The balance of our five minutes will be argued by Mr. Johnston, who will talk to you about post-confirmation applicable commitment period issues. The trustee argues that the applicable commitment period is a temporal requirement – Not with the disposable income argument, he seems to have thought of it that way. All right. The projected disposable income, in the trustee's opinion, is a distinct and different definition than disposable income, and there are many reasons why. First, projection. Maybe because it has projected in front of it? Exactly. That accounts for some forward-looking approach. Lanning tells us that. He says $237 is there, but he says he only gets a certain amount of credit under the means test. Tell us what he's talking about. What he's talking about in the trustee's position is the disposable income test under 1325B2 is a starting point. Many times we stop there as a trustee. We say the debtor has no disposable income, or we think they do. The projected disposable income, and this debtor is showing projected disposable income in that extra $237 a month, we get to object for the benefit of unsecured creditors to make a payment out to them. And in this case, the dividend goes from zero to 75%. That is a significant change, and that is known at the time of confirmation. It is certain at the time of confirmation that within 15 months, the plowers will have paid their attorney, and that money being paid to the attorney can go to unsecured creditors. That is known. That is virtually certain, and it's well within the court's discretion and the bankruptcy court's discretion to capture that underlining and make that projected disposable income. Other reasons that projected disposable income is different from disposable income, disposable income is a historical calculation based on the six months prior to filing, the internal revenue manual deductions, the allowable other necessary expenses under the internal revenue manual, secured debt payments, and priority payments. It doesn't account for any changes that are known that exist at the time of confirmation. It is an algorithm. It is a formula that can be manipulated. There was some indication that maybe went by me a little quick that typically the attorneys fees could be spread out over the whole period of time, but in this instance they were sort of crunched there. Well, in our district. This is a local rule? Yeah, this is a local rule. It is for the purpose of most attorneys don't want to get a check over 60 months for $35. They want to be paid within a certain time. The local rules committee has accommodated our bar and made a compromise that attorney fees will be paid roughly within the first 15 months of the confirmed plan. But getting back to the point of the distinctions between disposable income and projected disposable income, here are some more distinctions. Projected disposable income is to be calculated on the effective date, which is usually the confirmation hearing. So at that time there might be known changes that is known at confirmation that we want to take an effect in the projected disposable income. On top of that, it is to be received through the applicable commitment period. That means that we are accounting for in projected disposable income these changes at the time of confirmation for the three years to five years life of this plan. Here the plowers, in our opinion, the applicable commitment period should be five years. They're above median. They should be in a plan for 60 months. There are many circumstances where on the effective date of the plan and the applicable commitment period, there is a known change to the disposable income, which gets captured in projected disposable income. For example, a debtor may have a court-ordered restitution payment or domestic support obligation. They get to deduct that on their means test. But let's just say that that's going to be paid off in 12 months. That doesn't exist. Projected disposable income captures that. Maybe they're paying a car outside the plan as a long-term debt obligation that will be paid off in 12 months. So is NRA quickly distinguishable as the other side says it is? I think NRA quickly hit it right on the nailhead. On the nailhead for them or for you? For us in that it quickly looked at this concept between disposable income under B-2 and projected disposable income under B-1B. And as I read quickly, they were very careful, the judge was, not to use the term synonymously. And they never, if you read the opinion, there is no sort of morphing and meshing projected disposable income and disposable income into the same term. They are distinct terms. And Lanning recognizes that in that, Lanning recognizes that projected disposable income existed prior to BAT-CEPA. That phrase was never amended. It didn't have a definition, but it was never amended. And so the Congress, you know, just created disposable income in our opinion as a screening mechanism. You know, and if all things are equal at the time of confirmation, we go with that. But if it is not, and it is in this case, we need to look at projected disposable income to capture those anomalies that might exist. Some other reasons that projected disposable income is different is that, like I said, the changes that occur in the applicable commitment period, domestic support obligations get paid off. One biggie is that retirement loans. A lot of people have 401K loans. Most of those get paid off within a five-year period. Those payments on those retirement loans can be captured in projected disposable income. Now the appellant wants to make this whole case about the projected disposable income, but we see it more as the applicable commitment period. The plowers have filed what we call an early termination plan, which basically pays all their priority claims, their secure claims, their arrearage catch-ups, tax claims, and then once it starts to dip into the next month and pay one penny to unsecureds, it stops. And we think that this should be in a five-year plan because that would produce some distribution to unsecured creditors during that five months, in addition with the additional projected disposable income. But the applicable commitment period denotes a time duration. Period defined basically means a period of time. It is a time-oriented word. And therefore, to put it to a multiplier like they want to do is wrong because nothing in the applicable commitment period tells us to multiply other than its connection to CMI. It has no connection to PDI. PDI, they are similar, but they are two distinct things that are independent of each other. And that is what we are arguing is that applicable commitment period is a temporal requirement requiring all debtors to be in a lengthy 36 but no more than 60 plan. I don't know. It looks like to me all the other circuits that looked at it, any circuit look at it any differently? I know the Ninth Circuit was going the other way and then it went on and reversed itself. So that case looked like it was right on all fours to me, but I could be wrong. So tell me I'm wrong. You are not wrong. The underpinnings of the appellant's brief were destroyed by Flores. This mechanical hybrid, whatever you want to call it, approach of tying the applicable commitment period into some correlation of a multiplier with PDI or projected disposable income is dead. The only opinion that exists out there that is published that still sees it that way is from Judge Leonard in our court in the Eastern District, the Ballew opinion. That's the only one that's standing that does that. Flores basically overturned Kagan-Villama. Judge Leonard is a pretty reasonable fellow. He's highly reputed. He's strong stuff. I highly respect him. And we highly repute him. And he's going to make a wonderful dean at Campbell Law School now, and I respect him very much. I just disagree with him on this. I think- Let me ask you this. Mm-hmm. This was a mass hearing, where we had multiple judges and all, and I seem to recall in the order somewhere it said, unless the debtors can provide evidence that it is known or virtually certainly unable to make payments, did they ever get a chance to do that in that mass hearing? No. So at the very least, are you saying that this case is going to have to be-or at least when it goes back, that's going to have to be determined, or at least they'll have to have that opportunity? Well, if it's on remand, if the court gives us guidance and remands it back for evidence as to feasibility and whether this- But even if we hold in your favor, still that is there, that avenue should still be there No, they did not. There was no evidentiary evidence presented. We let the documents speak for themselves, and it was a mass hearing arguing basically the general concept of early termination and projected disposable income. It is a prevailing practice in our district that debtors can have early terminations of their plan, despite what I think is contrary to 1325b-4. Also on top of that, it's a judicially created exception to the applicable commitment period. Nowhere in the statute except for 1325b-4b is there an early termination provision. B-4b allows a debtor to exit a plan if they pay all their unsecured creditors faster. I thought the court here said that early termination language was void. Exactly. So, is that on appeal? That's what's on appeal here. Yeah, but there are the blue opinion and another opinion in two other divisions are allowing early termination plans, and it all goes back to the fairness of this. I mean, the bottom line is this, is that while the Plyler's case is not the worst case you'll ever see with an early termination, there is a purpose for the Plylers to be in Chapter 13. They're trying to save their house and their cars, and I respect that of the Plylers. However, there are many cases where there is no disposable income at all. Is this ongoing now? I mean, while it's on appeal, these payments are actually being made and all of this is being done, isn't it? Correct. But, getting back to the, I guess, like the world view of the Eastern District, there are many cases where there is no disposable income, none. There is nothing being reorganized in the plan. There is no cars. There are no taxes. There are no mortgage arrears. What's being paid is the attorney fees, and they're above median income debtors that are in these plans for 15 to 18 months, and then they get a discharge. Is this going to happen in every case with that local rule? Now that I think about it, the attorney fees will only go, let's say, for five months or six months. At the end of the end, is there going to be a plus up there for secure creditors because the attorney fees are no longer being paid? Typically, what happens is the priority and secured will take one step above the unsecured before distribution of unsecured occur, meaning that, you know, the car payments get paid more aggressively, the tax claims get paid more aggressively, and then, you know, when that's done, then at the back end of the plan, the unsecured start getting a cut of the payment. You need to help me out on that just a little bit. Okay. I'm trying to understand if that's the case and why it's not being done here. Why don't you just plus up the secured ones, or is it? Is that the case? You see where I'm going with this? And I mean, if you got $237 being paid for a certain period of time, then you drop down to $1,500 instead of $1,700. I'm saying, isn't that every case that, based upon your rule, since you don't spread it out over the whole time period, that at some point in time, the attorney fees will be paid off, therefore, there is going to be some money there. Does something then happen in every case like that? Well, I'm just looking at the plower specifically, and maybe Mr. Johnson can speak to that a little better, because he is the person that is the point man on understanding how this money gets applied, as opposed to me, who is arguing more of the concepts here, and he might be able to help you. I'm just asking a general question. Okay. Just dealing with the attorney fees. You say the local rule says you can crunch them up, and you pay them early. So in every case, when they're paid off, do you have a situation where you then have more money that is available for secured, unsecured credit? Yes. When you pay down more aggressively the secured claims, you are building more months into the plan, or less months into the plan to pay those claims off. I'm not talking about the attorney's fees. I don't think that they're not called secured claims. No. They're called statutory, like funeral expenses. It's kind of a nice thing they do for lawyers. I guess lawyers wrote that statute for that. But I'm only talking about the attorney's fees, that this has to happen in every case to follow your argument. No. The attorney fees can be built in in a consistent stream payment throughout the life of the plan. But your local rule is what I'm saying. Yes. How does that create the situation that this is going to happen in every case, if that local rule is followed? Oh, now I'm following you. Thank you. Okay. I apologize. Most attorneys will build in their plan payment to be equally or consistent throughout the life of the plan, which captures the 15-month payoff of the attorney fees. Some attorneys will say, my client can't afford to pay me in 15, I'm going to do it in 24. So it's all a case-by-case basis. But the local rule will allow it. Most attorneys don't do step-down plans. They do consistent plans where the payment's consistent throughout the life of the plan. And I apologize for not understanding that question. One last thing. I just want to emphasize that there's only one exception to the temporal requirement of the applicable commitment period, and that's if the debtor pays off their plan earlier. The current situation with early termination plans is a judicially created one in the below opinion that I don't think exists under 1325. And thank you for your time. I'm out of my time. Thanks. Thank you very much. Mr. Johnston? Good morning, Your Honors, and may it please the Court. I would like to briefly address the impact of the post-confirmation setting on the applicable commitment period. This Court should hold, should affirm the Bankruptcy Court below because a temporal requirement in Chapter 13 is an important provision that provides a minimum duration to a Chapter 13 plan. In this case, 60 months for the above-the-indebtor in this case. Under the hybrid approach... Was that answered in the Flores case and all these other circuits? It was, Your Honor. They did examine Section 1329 and its application under the 60-month... Like every other circuit. Maybe there was one that didn't go in that direction. What are you adding to that argument that's in the Flores case? I'm curious. Well, Your Honor, I would just like to, it's my goal to illustrate for the Court that the hybrid approach allows an above-median plan to end in fewer than 60 months. And essentially, Section 1329 of the Code is unavailable to the trustee or an unsecured creditor. And we see it on a regular basis in Chapter 13 practice. I work for the respondent of Chapter 13 trustee. And we see instances where after confirmation, income increases due to a raise, due to promotions. Also, the other necessary expenses that are examined at the time of confirmation may decrease. Taxes may increase and take up a greater chunk of a debtor's disposable income. This Court examined earlier this year the Carroll v. Logan case where an inheritance was received in a Chapter 13 case. It was, Your Honor. And in that case, an inheritance of $100,000 was received during the life of a Chapter 13 plan. There are many instances I'm sure the Court can imagine. But why this is important today is because the hybrid approach is a rule that the Court or the petitioner is asking the Court to institute in a circuit. And it would allow the petitioner to complete a plan of 55 months. In other cases under the Code, it may allow a plan to complete in as little as 24 months or 36 months. And the trustee or an unsecured creditor no longer has the mechanism to seek increased repayment from a debtor in those lost months. In this case, it's only months 56 through 60 that are lost. But in other cases, it may be months or years. The trustee, because of the civil rules that we have, is also faced with extreme difficulty in undoing a plan that is shut down so early. For instance, the discharge order is entered by the Court soon after a plan has completed. So if a plan under the hybrid approach completes in 24 months, the Court may enter the discharge order. And then recently, as we saw in our trusteeship, my trustee examined a situation where two years later, the debtor in that case reopened their case, brought a sanctions motion for some creditor misconduct that occurred post-discharge, and was awarded $59,000 in a sanction award. And my trustee said, well, shouldn't that money be coming into this plan in this case? And the answer, his answer was yes. But the trouble with that is we're now faced with civil rules, Civil 60, which is incorporated into the Bankruptcy Rules 9024. And it has strict and narrow grounds for which to overturn that discharge order. It also, under 60C, must be brought within 12 months of the order. And here we are two years later, and it's just a very uphill to impossible battle. This is just such a result that could not have been intended by Congress. In fact, Judge Wynn, in your opinion in the Carroll case, you stated that the Supreme Court has eschewed interpretations of bankruptcy statutes that would deny repayments to creditors that a debtor could easily afford to make. And I think the hybrid approach is an example of where it denies opportunities for creditors to be repaid. The Flores Court in the Ninth Circuit has also noted the importance of post-confirmation setting of 1329 and its importance to the 60-month minimum duration. And I think that the intent of the statute and the durational language in the statute are very informative to the court. And we ask that you affirm the decision of the bankruptcy court below. And I thank the court. Thank you. Mr. Rowland, you have some time on rebuttal? Thank you, Your Honor. Judge Duncan, first I want to address your question that you asked me, which is that if there is a change in the plan payment prior to confirmation, does the trustee I said after post-confirmation. Post-confirmation, then it comes under the Murphy decision. As to the disposable income formula, Judge Wynn, the reason that the disposable income formula was implemented by Congress for above median debtors was because there was seen by Congress an abuse in calculating what is reasonable and necessary for a debtor based on this case-by-case individual basis because it led to these varying and inconsistent results. That's why Congress for above median debtors implemented this strict test, called the disposable income test. Now, the only modification to disposable income is the adjective projected. But that adjective does not, you know, change the foundation of the test that Congress implemented because the whole point of the test was to reduce this discretion. While the test is focused on the six months prior to filing, there are adjustments that may be taking place based on the circumstances of the debtor. And that's what Lanning says that we can do. But you cannot depart from the test because that's what Congress implemented to reduce this case-by-case individual discretion of what can a debtor afford. That's why it comes up to a number as far as the disposable income test. Now, if there is something that is not being reflected based on the debtor's actual circumstances, then an adjustment is made within the test. And that forms projected disposable income because those adjustments are made. But as the Supreme Court said in Hamilton v. Lanning, disposable income is the foundation of projected disposable income. Now, in this case, the trustee never challenged the debtor's negative $291 disposable income test. They just held that, well, projected disposable income, we can ignore the disposable income calculation. Projected disposable income, that means something entirely different. We can focus on what the debtor is really spending their money on as far as that goes. Now, the problem with that... At least in the Lanning case, the Supreme Court saw a difference between the two, projected and disposable, at least from the perspective of saying it's not a mechanical test approach. Absolutely. Projected. Because we're not focused on the 6-month average prior to filing of income and expenses. We can focus on what the debtor's actual circumstances are and we make adjustments within the disposable income test. You can't abandon the framework that Congress instituted for the sole purpose of limiting the discretion of judges, which it found was varying all from the start. Now, in this case, the debtors, you know, they have negative $291 of disposable income. There was never a challenge to that, that that didn't reflect their actual circumstances, that there was something within that test that needed to be reflected based on projected modifying that test. And here the debtors are, you know, the Bankruptcy Court found that there was $20,000, over $20,000 of projected disposable income, based on a fluctuation of plan payment that the debtors would have to pay in order to confirm a test. Well, the problem with that is, is that based on the test that the Bankruptcy Court found, from months 56 through 60, the Bankruptcy Court is saying that the debtors must pay $1,784 to unsecured creditors alone. Well, the issue with that is, is that the original plan only proposed 55 months of mortgage payments because it was a 55-month plan. So the debtors are still going to owe their mortgage in months 56 through 60. And this is the type of varying and inconsistent results that Congress sought to do away with. Because here my clients are stuck in months 56 through 60, paying $1,784 to their unsecured debt, with little ability to make their $698 mortgage payment. This is going to put them right back into the whole situation that they came to bankruptcy to avoid. And that's why we have this test. It's to avoid these varying and inconsistent results. My clients do not have the ability to make $1,784 to unsecured creditors in months 56 through 60 and pay their mortgage. How about the plan was continued for another 5 months or so from 55 to 60? I didn't know it was... The bankruptcy court... The bankruptcy court had changes say he was going to stretch it out and continue. Yeah, he said he was going to stretch it out based on the plan ending and all that money was going to go to unsecured creditors. The math in the case does not work because it doesn't account for the mortgage payment that must be paid for months 56 through 60. The mortgage payment just stops. The unsecured debt amount proposed to be paid in the plan, it only lasts 55 months. They don't account for this ongoing monthly mortgage payment that's still going to be owed. So here my clients are, you know, paying $1,784 based on the judge's discretion outside of this test and with little ability to make their mortgage payment. And this is the decision that Judge Leonard in Ray Blue and Judge Hummerkaus in Ray Temple made because we follow the disposable income test and we adjust based on projected. You can't abandon the test. Everything you just said sounds like it's a harsh inequity to make these folks pay $1,700 and have to pay the other. But didn't I just ask about is this a mass hearing and that being a mass hearing, isn't this thing going back which, as the courts say, you will get to talk about those things and present that evidence you just gave me? But, Your Honor, the issue with this is you are not... Why don't you get a chance to go back because it's right there, it's a mass hearing. Sit in an order, unless you can show it. I mean, can't you do that? Is it as inequitable as you just represented to us right there? That's my question. Your Honor... But the point that I'm bringing up is that when you depart from the test and we go back to the discretion of judges to calculate what projected disposable income is... That's evidence. I understand. And evidence is something that needs to go to a hearing. It says, unless the debtors can provide evidence that is known to purchase certain debt unable to continue to make the payment. And that evidence will be, well, we got to pay our mortgage, we got to pay this, and we got to do that. You confuse me real good there for a moment because I'm sitting there saying, God, that is horrible. Until that came to my mind, am I wrong on that, that you're not going to have a chance to present that evidence? Your Honor, but what it is is what... Yes. You are going to be able to present that evidence. Yes, I hope we will have that opportunity. So this horror picture you just painted for us, you didn't tell me that when you were presenting, making that statement. But it is the plan that the judge directed the trustee to propose. You got a chance to go back and do it. I mean, I'm trying to do the right thing here. This is confusing law. I understand. I don't need anybody confusing me on this stuff here. I understand that your argument from the perspective you're saying, you said we just do that and we don't consider that. Just look at this. But it's right there on the other side that you can go back and do this. Because I was concerned about that, the fact that this is a mass hearing and they said, well, unless you come up with whatever's there. And the reason that I bring up that point at this issue is because it comes back to the test and why we have it. And what you do is you follow the test, you account for any projections and that determines what your projected disposable income was. You don't depart from the test. This court held in the Mort Ranta case that while you account for projected disposable income within the disposable income calculation, you cannot ignore the test. That's not what Lanning does say. I think this opinion in Mort Ranta reflects this because it allows us to account for changes but you can't depart from the formula. Oh, and I believe I'm on time. If you have any more questions. Thank you. Thank you very much. We will ask the courtroom deputy to adjourn court and we will come down and greet counsel.
judges: Allyson K. Duncan, James A. Wynn, Jr., Stephanie D. Thacker